<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARL A. GAROFOLA,<br><br>    Plaintiff,<br><br>    v.<br><br>VELA RESEARCH USA, INC.,<br><br>    Defendant. | Civil Action No. 14-2505 (ES) (JAD)<br><br>OPINION & ORDER |

**SALAS, DISTRICT JUDGE**

**I. INTRODUCTION**

Before the Court is a motion by Defendant Vela Research USA, Inc. ("Vela") to dismiss Plaintiff Carl A. Garofola's Amended Complaint. (D.E. No. 12). The Court decides this motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons below, the Court converts Defendant's motion to dismiss into a motion for summary judgment and grants summary judgment to Defendant.

**II. CONVERSION TO MOTION FOR SUMMARY JUDGMENT**

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may consider only the allegations of the complaint, documents attached or specifically referenced in the complaint if the claims are based on those documents, and matters of public record. *In re Bayside Prison Litig.*, 190 F. Supp. 2d 755, 760 (D.N.J. 2002). If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The court has discretion to either convert a motion to dismiss into a motion for summary judgment, or to ignore matters

1

outside of the pleadings and continue to treat the motion as a motion to dismiss. *Kurdyla v. Pinkerton Sec.*, 197 F.R.D. 128, 131 (D.N.J. 2000). Typically, a court must notify the parties before converting a motion to dismiss into a motion for summary judgment. *Rose v. Bartle*, 271 F.2d 331, 342 (3d Cir. 1999). However, when a defendant files a "motion to dismiss styled in the alternative as a motion for summary judgment," the motion is "sufficient to put [plaintiff] on notice that summary judgment might be entered." *Latham v. United States*, 306 F. App'x 716, 718 (3d Cir. 2009).

Here, both parties acknowledge that Defendant has "asked the Court to look to matters outside of the pleadings" (D.E. No. 12-1, Brief in Support of Vela Research USA, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint ("Def. Mov. Br.") at 5; *see also* D.E. No. 13, Brief in Opposition to Vela Research USA, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint ("Pl. Opp. Br.") at 2). Defendant suggests in its moving brief that "the Court may treat Defendant's initial Motion to Dismiss as one for Summary Judgment under Fed.R.Civ.P. 56." (Def. Mov. Br. at 5). This alternative pleading is sufficient to put the parties on notice that the Court may enter summary judgment. *See Latham*, 306 F. App'x at 718. Plaintiff goes one step further, arguing that the Court "must employ the summary judgment standard." (Pl. Opp. Br. at 4). Given the parties' agreement that the summary judgment standard should be applied, the Court converts Plaintiff's motion to dismiss into a motion for summary judgment.

## III.   BACKGROUND

Plaintiff Carl A. Garofola is a New Jersey resident who was previously employed by Defendant, a Delaware corporation. (D.E. No. 10, Amended Complaint ("Am. Compl.") ¶ 1). Plaintiff was hired on or about September 3, 2012 as a field service representative performing repairs and installation services. (*Id.* ¶ 2).

Defendant terminated Plaintiff on or about May 23, 2013. (*Id.* ¶ 4). Plaintiff alleges that he was told that his position was being eliminated, but in fact he was replaced by a younger individual. (*Id*. ¶ 10). Plaintiff was fifty-six years old at the time of his termination; he alleges that the individual who replaced him was under the age of forty. (*Id.*). Plaintiff further asserts that he was terminated for refusing to "pass" certain systems installations at customer sites, even though those systems failed inspection. (*Id.* ¶¶ 13-14).

On May 30, 2013, a phone call occurred between Plaintiff and Michael V. Nigro, Defendant's Chief Executive Officer. (D.E. No. 12-3, Certification of Donna Tylenda[1] ("Tylenda Cert.") ¶ 2). During the call, Plaintiff and Nigro discussed Plaintiff's termination and the terms of his severance agreement. (Tylenda Cert., Ex. A, Documentation of Phone Conversation ("Tylenda Notes")).

Also on May 30, 2013, Nigro signed a Separation Agreement and Release of Claims (the "Separation and Release Agreement") on behalf of Defendant. (Tylenda Cert., Ex. B, Separation and Release Agreement at 3). Defendant mailed the Separation and Release Agreement to Plaintiff, who received it on June 6, 2013. (Pl. Opp. Br. at 1). Plaintiff signed the Agreement on June 7, 2013. (*Id.*; *see also* Separation and Release Agreement at 3).

At some point prior to executing the Agreement, Plaintiff spoke with Tylenda regarding his final paycheck. (Tylenda Cert. ¶ 5). Tylenda asserts that the Separation and Release Agreement came up during this conversation with Plaintiff. (*Id.*). She states that she encouraged Plaintiff to speak with an attorney about it. (*Id.*). Plaintiff disputes that Tylenda encouraged him to seek counsel regarding the Separation and Release Agreement. (Pl. Opp. Br. at 13 (citing D.E.

---

[1] Tylenda is the Office/Human Resource Manager for Defendant. (Tylenda Cert. ¶ 1).

3

---

No. 4, Certification in Opposition to Notice of Motion to Dismiss the Complaint ("Pl. Cert.")[2] ¶ 4)).

At some point after signing the Separation and Release Agreement, Plaintiff spoke with Tylenda and "inquired about the payment of overtime." (Pl. Opp. Br. at 1; Tylenda Cert. ¶ 7). Plaintiff alleges that he was improperly "refused" overtime, and that "US Department of Labor Wage and Hour Division conducted an investigation and determined that plaintiff was not paid overtime as required under the Fair Labor Standards Act." (Am. Compl. ¶¶ 5-7). Defendant contests this fact, and asserts that Defendant was "properly classified" and compensated. (Tylenda Cert. ¶ 7). Plaintiff alleges that Defendant's conduct caused him to suffer "severe depression resulting in medical treatment and subsequent disability." (Am. Compl. ¶ 17).

Plaintiff filed his original Complaint against Defendant on March 26, 2014 in the Superior Court of New Jersey, Law Division, Passaic County. (D.E. No. 1-1, Complaint). Defendant removed the case to this Court on April 18, 2014. (D.E. No. 1, Notice of Removal). On April 28, 2014, Defendant filed a motion to dismiss the original Complaint. (D.E. No. 3). On September 24, 2014, the Court held a conference with the parties pursuant to Federal Rule of Civil Procedure 16. (*See* D.E. No. 8). During the Rule 16 conference, the Court granted Defendant's motion to dismiss without prejudice and granted Plaintiff thirty days to file an Amended Complaint. (*Id.*; *see also* D.E. No. 9, Order).

Plaintiff filed his Amended Complaint on October 17, 2014. (Am. Compl.). The Amended Complaint alleges causes of action under the Fair Labor Standards Act ("FLSA"), the New Jersey Law Against Discrimination ("LAD"), and the Conscientious Employee Protection Act ("CEPA").

---

[2] Plaintiff submitted this certification in lieu of a brief in opposition to Defendant's first motion to dismiss the original Complaint. He relies on the certification throughout his current opposition brief, and the Court will permit counsel to rely on the certification on this motion.

It also alleges intentional infliction of emotional distress. (*Id.*). Defendant again moved to dismiss on October 29, 2014. (D.E. No. 12). Plaintiff responded on November 10, 2014. (D.E. No. 13). Defendant replied on November 24, 2014. (D.E. No. 14).

### IV.     LEGAL STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact, and if, when viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to a judgment as a matter of law. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); Fed. R. Civ. P. 56(c). A genuine issue of material fact exists for trial when a reasonable finder of fact could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "To be material, a fact must have the potential to alter the outcome of the case." *DeShields v. Int'l Resort Props. Ltd.*, 463 F. App'x 117, 119 (3d Cir. 2012).

The moving party must first show that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323. If the movant meets this burden, the burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. In presenting that evidence, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). Ultimately, the non-movant must show that there is "evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. *Celotex*, 477 U.S. at 324. Furthermore, the non-

moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Longstreet v. Holy Spirit Hosp.*, 67 F. App'x 123, 126 (3d Cir. 2003).

## V. DISCUSSION

Defendant argues that it is entitled to summary judgment dismissing all of Plaintiff's claims because Plaintiff executed a valid Separation and Release Agreement that unequivocally released all claims against Defendant. (Def. Mov. Br. at 6). The parties do not dispute that the Separation and Release Agreement states as follows:

> Carl Garofola . . . hereby covenants not to sue and fully releases, acquits, and discharges Vela Research USA, Inc. and its subsidiaries and affiliates, past present, future and each of them, as well as its owners, trustees directors, officers, agents, servants employees, stockholders, representatives, assigns, and successors (collectively referred to as "Vela Research USA, Inc. Releases") with respect to and from any and all claims, wages, demands, assistance, support, rights, liens, agreements, contracts, covenants, actions, suits, rights to appeal, entitlements and notices, causes of action, obligations, debts, costs, expenses, interests, attorneys' fees, contributions, damages, judgments, orders and liabilities of whatever kind or nature in law, equity, or otherwise, where this known or unknown, suspected or unsuspected, and where this or not concealed or hidden, which he has at any time heretofore owned or held against said Vela Research USA, Inc. Releases, including, without limitation, those arising out of or in any way connected with his employment relationship with Vela Research USA, Inc. or his termination or any other transactions, occurrences, actors or omissions or any loss, damage or injury whatever, known or unknown, suspected or unsuspected, resulting from any of them, committed or omitted prior to the date of this Agreement, and including, without limitation, claims for breach of contract, libel, slander, wrongful discharge, intentional infliction of emotional harm, or other tort, or discrimination or harassment based upon any federal, state or municipal statute or local ordinance relating to discrimination in employment.

(Separation and Release Agreement at 2).

In the Third Circuit, it is settled law that an employee may waive claims against an employer so long as the waiver is made "knowingly and willfully." *Chuchara v. Gai-Tronics*

*Corp.*, 129 F. App'x 728, 730 (3d Cir. 2005) (citing *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 522 (3d Cir. 1988)). To determine whether a release agreement was made knowingly and willfully, the Third Circuit applies a "totality of the circumstances" test. *Id.* at 731. In applying this test, Third Circuit courts should consider factors including, but not limited to, the following:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

*Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451-54 (3d Cir. 1988).[3] The parties here do not dispute that the Court must consider the "totality of the circumstances," nor do they materially dispute the factors that the Court should consider. (Def. Mov. Br. at 6-7; Pl. Opp. Br. at 5-7). The parties only dispute the outcome of the test. The Court considers each factor below.

**1. The clarity and specificity of the Separation and Release Agreement**

First, the Court considers the language in the Separation and Release Agreement. *See Cirillo*, 862 F.2d at 451. Courts have routinely held that a release agreement is sufficiently clear and specific when it releases an entity from any and all claims, lists various causes of action, and states that the waiver is "including but not limited to" those claims. *See, e.g.*, *Geraghty*, 369 F. App'x at 406; *Cuchara v. Gai-Tronics Corp.*, 129 F. App'x at 730-31; *see also Cooper v. Borough of Wenonah*, 977 F. Supp. 305, 317 (D.N.J. 1997) (finding language waiving "any liability, past

---

[3] *Cirillo* has been superseded in part by the Age Discrimination in Employment Act ("ADEA"), which now includes its own waiver provision. *See Geraghty v. Ins. Servs. Office, Inc.*, 369 F. App'x 402, 404 n.2 (3d Cir. 2010) (citing *Long v. Sears Roebuck & Co.*, 105 F.3d 1529, 1539 (3d Cir. 1997)); *see also* 29 U.S.C. § 626(f). Plaintiff, however, does not assert an ADEA claim in this case, and therefore *Cirillo* governs.

7

present or future for any alleged problems or damage" to be "unambiguous and sufficient").

Defendant argues that "[h]ere, the clarity of the Agreement's language weighs heavily in favor of its enforceability." (Def. Mov. Br. at 7). It argues that "the Agreement contains clear, specific and comprehensive language relating to Plaintiff's release of any and all claims for wages, or wrongful discharge, intentional infliction of emotional harm, discrimination and harassment." (*Id.* at 8). It further argues that the document "uses plain language capable of understanding by non-attorneys." (*Id.*). In response, Plaintiff argues this factor weighs toward Plaintiff because the "releasing language does not refer to any claims for damages under CEPA, for overtime under the FLSA, or the LAD." (Pl. Opp. Br. at 10). Plaintiff relies on *Keelan v. Bell Communications Research*, 289 N.J. Super. 531, 545 (N.J. Sup. Ct. App. Div. 1996), to assert that "[g]iven the peculiar importance of CEPA in protecting whistleblowers' rights and thereby ensuring public health and safety, defendant's failure to mention CEPA claims by name and the effect, if any, upon the issue of whether the release was knowing and voluntary, raise[s] a material issue which should have precluded a grant of summary judgment." (Pl. Opp. Br. at 10 (citing *Keelan*, 289 N.J. Super. at 545)).

The Court agrees with Defendant. The Separation and Release Agreement clearly and plainly states that Plaintiff will not sue Defendant. (Separation and Release Agreement at 2) ("Carl Garofola . . . hereby covenants not to sue"). The Separation and Release Agreement states that it bars actions arising out of Plaintiff's employment relationship with Defendant or his termination, including, *without limitation*, claims for breach of contract, intentional infliction of emotional harm, or discrimination or harassment based upon any federal, state, or municipal statute or ordinance relating to employment discrimination. (*Id.* (emphasis added)). Accordingly, the language in the Separation and Release Agreement is similar to language in other agreements that

8

courts have found sufficiently clear. *See, e.g.*, *Geraghty*, 369 F. App'x at 406; *Cuchara*, 129 F. App'x at 730-31.

The fact that the Separation and Release Agreement does not specifically state that Plaintiff waives CEPA, FLSA, or LAD claims does not render it unclear or unenforceable. In *Geraghty*, the Third Circuit rejected the argument that a release agreement must specify the release of a CEPA claim to be enforceable. *Geraghty*, 369 F. App'x at 406. There, as here, the plaintiff attempted to "circumvent the broad language of the release, arguing that the Release failed to specify that it included release of a CEPA claim." *Id*. However, the Third Circuit "agree[d] with the District Court's rejection of this argument," noting that "[u]nder New Jersey law, the phrase 'any and all' allows for no exception." *Id.* In addition, the Third Circuit rejected the plaintiff's reliance on *Keelan*, noting that he had cited "no case since *Keelan* in which a court has held that a general release is unenforceable as a waiver of a CEPA claim. In contrast, courts have enforced general releases where other remedial employment laws are not specifically named." *Id.*

Similarly, in *Swarts v. Sherwin-Williams Co.*, 170, 581 A.2d 1328, 1331-33 (N.J. Super. Ct. App. Div. 1990), the Appellate Division determined that the trial court properly dismissed plaintiff's LAD claim based on a release agreement, even though that agreement did not specifically mention the LAD. *Id.* Thus, the Court rejects Plaintiff's argument that the Separation and Agreement lacks clarity because it does not spell out each of Plaintiff's potential claims. The Plaintiff agreed not to sue Defendant with respect to "any and all claims . . . without limitation." (Separation and Release Agreement at 2). This necessarily includes claims that Plaintiff asserted in his Amended Complaint.

Furthermore, the Separation and Release Agreement contains the following statement in bold writing and all capital letters: "**PLEASE READ CAREFULLY. THIS AGREEMENT**

9

**INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS**." (*Id.* at 3). This statement appears directly above the signature line, and provides additional clear and unambiguous notice that the Separation and Release Agreement contains a waiver of claims. In sum, the language in the Separation and Release Agreement is sufficiently clear. This factor weighs toward finding the Separation and Release Agreement enforceable.

   2. **Plaintiff's education and business experience**

Next, the Court considers Plaintiff's business education and experience. *See Cirillo*, 862 F.2d at 451.

Defendant argues that this factor is "easily met" because "Plaintiff was being compensated at a level of sixteen (16) years of experience" and his resume confirms that "he has over thirty (30) years of experience, has attended numerous trainings, obtained certifications in various disciplines, and has an Associate's Degree." (Def. Mov. Br. at 8-9; *see also* Tylenda Cert., Ex. D, Carl A. Garofola Resume ("Resume")).

Plaintiff responds that this factor "does not tip for or against" either party because Plaintiff "is not a highly educated man, but he certainly has many years in the business world." (Pl. Opp. Br. at 8). Plaintiff relies on *Riddell v. Medical Inter-Insurance Exchange*, 18 F. Supp. 2d 468, 472 (D.N.J. 1998), in which plaintiff had "taken college courses and worked as an underwriter with a previous employer" but had not obtained a college degree. *Riddell*, 18 F. Supp. 2d at 472. There, the court found that the factor "does not weigh greatly in favor of one party or the other." *Id.*

The Court concludes that Plaintiff had sufficient business education and experience to understand the Separation and Release Agreement. Unlike the plaintiff in *Riddell*, Plaintiff has obtained an Associate's degree in "Applied Science, Business Tech, Network Administration." (Resume at 2). In addition, Plaintiff completed a number of company-sponsored courses and

"worked for some of the largest companies in the Medical Imaging & Analytical Industry." (*Id.* at 1-2). He has over thirty years of experience in his industry. (*Id.*). As Plaintiff admits, at least one court has found "sufficient education and experience to execute a release" when a plaintiff had received a high school diploma and attended a one-year secretarial school. (Pl. Opp. Br. at 7-8 (citing *Pears v. Spang*, 718 F. Supp. 441, 446 (W.D. Pa. 1989))). There is no reason for the Court to suspect that Plaintiff lacks the requisite education or experience to comprehend the Separation and Release Agreement, and therefore this factor weighs toward finding it enforceable.

### 3. The amount of time Plaintiff had for deliberation

Next, the Court considers the amount of time Plaintiff had to consider the Separation and Release Agreement. *See Cirillo*, 862 F.2d at 451. "[T]he Third Circuit interprets this factor as the total consideration time provided, rather than actually taken, by a terminated employee." *Sauter v. Fed'l Home Loan Bank of N.Y.*, No. 08-899, 2009 WL 2424689, at *5 (D.N.J. Aug. 5, 2009). Here, the Separation and Release Agreement states, in bold writing, "[p]lease review, sign and return within 21 days of receipt of this agreement." (Separation and Release Agreement at 3).

Defendant argues that twenty-one days is a sufficient amount of time to consider the agreement, tipping this factor in its favor. Specifically, Defendant relies on *Cuchara*, in which the Third Circuit found that twenty-one days was sufficient time for the plaintiff to consider a release. *See Cuchara*, 129 F. App'x at 731 ("[P]laintiff was not rushed into signing the Release. He was given twenty-one days."). Plaintiff does not address the fact that he was given twenty-one days to consider the Separation and Release Agreement. Rather, he focuses on the fact that he signed the Separation and Release Agreement one day after receiving it, and argues that this short time frame is "insufficient to pass muster." (Pl. Opp. Br. at 8).

The Court agrees with Defendant that Plaintiff was given ample time to consider the

11

Separation and Release Agreement. In responding to Defendant's argument, Plaintiff incorrectly emphasizes that he signed the Separation and Release Agreement one day after he received it. However, the Court must consider the time that Plaintiff was given to consider the Separation and Release Agreement—not how much time Plaintiff actually took. As the court in *Sauter* explained, "it would not make logical sense for a court to focus on the time that actually lapsed before a terminated employee signed the waiver rather than the time that an employee was provided. If such were the analysis, an opportunistic plaintiff who was provided with ample time would attempt to use his haste in signing the agreement as a defense to invalidate the waiver." *Sauter*, 2009 WL 2424689, at *5. In *Sauter*, as here, the plaintiff was afforded three weeks to deliberate about the release. Though the plaintiff in that case signed the agreement within four hours of receiving it, the court found that the deliberation time weighed in favor of a valid waiver. *Id.* Plaintiff has not pointed to any case in which a court found that twenty-one days was insufficient for a plaintiff to deliberate. In fact, at least one court has found that even less time is sufficient. *See Cooper*, 977 F. Supp. at 317 (holding two weeks was "adequate time to deliberate the release"). Accordingly, this factor weighs toward finding the Separation and Release Agreement enforceable.

4. **Whether Plaintiff knew or should have known his rights upon executing the Separation and Release Agreement**

Fourth, the Court considers whether Plaintiff knew or should have known his rights upon executing the Separation and Release Agreement.[4] *See Cirillo*, 862 F.2d at 451.

---

[4] The Court discusses this factor even though Plaintiff did not specifically address it in his opposition brief. Plaintiff cites *Swarts*, 581 A.2d at 1332, for the factors that the Court should consider in assessing the "totality of the circumstances" surrounding a release agreement. (Pl. Opp. Br. at 6). The court in *Swarts* did not explicitly list that a court should consider whether plaintiff knew or should have known his rights upon executing the release, but it did consider this factor in its analysis. *See id.* at 178 ("At the time he signed the release, it is undisputed that he had a full awareness of his age discrimination rights as evidenced by his prior assertion of his rights in his letter to the personnel department."). Thus, the Court will consider this factor in its analysis.

Defendant argues that Plaintiff was aware of his rights. Specifically, it argues that Defendant made Plaintiff aware of his rights via posted notices and an Employee Handbook, which Plaintiff acknowledged receiving. (Def. Mov. Br. at 10 (citing Tylenda Cert., Ex. E, Vela Research USA Incorporated Employee Handbook ("Employee Handbook") at 49 (Acknowledgement of Receipt))). Defendant further argues that it complied with its CEPA posting requirements by maintaining a CEPA notice in a conspicuous place at its office. (*Id.* (citing Tylenda Cert., Ex. F, CEPA Notice)).[5]

The Court determines that this factor also weighs in favor of finding a valid release. Plaintiff received an Employee Handbook, which informed him of his rights regarding discrimination. (Employee Handbook at 9-10). In addition, Tylenda certifies that Defendant posts the CEPA Notice at a conspicuous location in its office. (Tylenda Cert. ¶ 10). These notifications are similar to those in *Mullen v. New Jersey Steel Corp.*, 733 F. Supp. 1534, 1544 (D.N.J. 1990), where the court held that plaintiff knew or should have known that he was protected by the ADEA in light of posted notifications. *Mullen*, 733 F. Supp. at 1544 (holding plaintiff "should have known that the company was prohibited by law from discriminating on the basis of age" since he "worked at the plant for three years and notices of his rights under the ADEA were posted, one only twenty feet from his office"). Plaintiff has not disputed any of these facts, and the Court determines that they weigh toward finding a valid release.

**5. Whether Plaintiff was encouraged to seek, or in fact received, the benefit of counsel**

Fifth, the Court considers whether Plaintiff was encouraged to seek, or in fact received the benefit of counsel. *See Cirillo*, 862 F.2d at 451.

---

[5] Though Exhibit F contains the CEPA Notice, it does not demonstrate or indicate where (or even whether) it was posted within Defendant's office. However, Plaintiff does not dispute Defendant's assertions regarding its posting.

The parties do not dispute that Plaintiff did not receive the benefit of counsel before signing the Separation and Release Agreement. (Def. Mov. Br. at 10; Pl. Opp. Br. at 11). They also do not dispute that the language of the Separation and Release Agreement itself did not encourage Plaintiff to seek counsel. However, the suggestion that an employee should seek counsel may occur "either verbally or in writing." *Cirillo*, 862 F.2d at 454. The parties dispute whether Defendant verbally encouraged Plaintiff to seek counsel. Tylenda certified that, while speaking to Plaintiff about when his final paycheck would be issued, "the subject of the Separation and Release Agreement came up and I encouraged him to speak with an attorney to review the Agreement and reminded him that he had twenty-one (21) days to consider the Agreement." (Tylenda Cert. ¶ 5). Plaintiff contests that he was encouraged to consult an attorney, and asserts that "[a]t no time, did she ever advise me to go consult with a lawyer that is another one of her lies." (Pl. Opp. Br. at 13 (quoting Pl. Cert. ¶ 4)). Plaintiff further argues that he "did not think to consult an attorney before signing" because he was under pressure to sign due to financial concerns. (Pl. Opp. Br. at 13 (citing Pl. Cert. ¶ 3)).

Because there is a factual dispute regarding whether Defendant encouraged Plaintiff to seek counsel, the Court does not weigh this factor in favor of either party. The Court further notes that Plaintiff's argument that financial concerns pressured him to sign the Separation and Release Agreement does not change the outcome of this factor. (*See id.*). "The law is clear that the existence of financial pressure to sign a waiver is insufficient to establish that it was executed involuntarily." *Wastak v. Lehigh Valley Health Network*, 342 F.3d 281, 295 (3d Cir. 2001).

### 6. Whether there was an opportunity for negotiation

Sixth, the Court considers whether there was an opportunity for Plaintiff to negotiate the agreement. *See Cirillo*, 862 F.2d at 451.

Defendant argues that, during the May 30, 2013 phone call between Plaintiff and Nigro, Plaintiff "explicitly requested to negotiate the Agreement and as a result was given an additional month of severance benefits." (Def. Mov. Br. at 11; Tylenda Cert. ¶ 4; Tylenda Notes at 3). According to Defendant, this "demonstrates that Plaintiff was acutely aware of the terms of the Agreement with the purpose of obtaining the benefits that he negotiated." (Def. Mov. Br. at 11). By contrast, Plaintiff "denies that any negotiation took place." (Pl. Opp. Br. at 9).

The Court agrees with Defendant that Plaintiff had an opportunity to negotiate the Separation and Release Agreement. Though Plaintiff states that no negotiation took place, his description of the events confirms that a negotiation is exactly what occurred. Plaintiff states that he "explained to 'Mike Nigro what a tremendous hardship' would befall him, and Nigro 'offered him a second month of severance as a pacifier.'" (*Id.* (quoting Pl. Cert. ¶ 3)). Even viewing all evidence in the light most favorable to Plaintiff, there is no way to characterize this exchange as anything other than a negotiation where Plaintiff sought and obtained additional benefits in consideration for the Separation and Release Agreement. Accordingly, this factor weighs in favor of Defendant.

**7. Whether there was consideration in exchange for the waiver**

Finally, the Court considers whether there was any consideration given in exchange for the waiver that exceeds the benefits to which the employee was already entitled by contract or law. *See Cirillo*, 862 F.2d at 451.

Defendant argues that the Agreement was "supported by adequate consideration because Plaintiff was given an extension of his salary for two months that he otherwise was not entitled to." (Def. Mov. Br. at 11). Plaintiff concedes that eight weeks paid salary is sufficient consideration, and that therefore "this consideration militates in favor of employer." (Pl. Opp. Br.

at 11). The Court agrees with both parties that Plaintiff received adequate consideration and this factor favors enforceability.

## VI. CONCLUSION

Based on the totality of the circumstances, the Court determines that the Separation and Release Agreement is valid and enforceable and bars all claims in Plaintiff's Amended Complaint.[6] In fact, six of the factors weigh in favor of enforceability. Though the Court determined that the fifth factor—whether Plaintiff sought legal counsel—does not weigh in either direction because a factual dispute exists, this factual dispute is not "material" because it does not change the outcome of this litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Even if the Court determined that Plaintiff was not encouraged to seek counsel, the Separation and Release Agreement would still be enforceable based on the totality of the circumstances, including all of the other factors that weigh toward enforceability. For this reason, the Court does not need to address Defendant's argument that the "tender-back" doctrine applies. (*See* Def. Mov. Br. at 11-12). Nor does it need to address Plaintiff's argument that punitive damages are available to Plaintiff. (*See* Pl. Opp. Br. at 14).

For the foregoing reasons, Defendant's motion to dismiss the Amended Complaint, (D.E.

---

[6] In addition to the factors evaluated by the Court, Plaintiff raises two additional considerations for the Court to consider. First, he argues that "Plaintiff alleges that employer was guilty of fraud in the inducement when it advised him that his position was being eliminated." (Pl. Opp. Br. at 14-15). Second, Plaintiff alleges that he "later learned that a younger man replaced him" and that his "employer lied to him, and thereby, dissuaded him from believing that he was the victim of age discrimination." (*Id.* at 14). The Court acknowledges Plaintiff's arguments, but notes that Plaintiff's Amended Complaint does not state any claim for fraud, nor does it state a claim under the ADEA. Thus, to the extent that Plaintiff now seeks to plead claims that are not asserted in his Amended Complaint, the Court cannot entertain them. The Court explicitly instructed Plaintiff to include a fraud claim in its Amended Complaint if he planned to argue that fraud occurred, but Plaintiff failed to do so. (Sept. 24, 2014 Transcript at 7:10-8:6). In addition, to the extent that Plaintiff is arguing that the Separation and Release Agreement is unenforceable due to fraud or age discrimination, these arguments do not affect the Court's determination that the Separation and Release Agreement is valid and enforceable. *See Cuchara*, 129 F. App'x at 731 (fraud argument in plaintiff's brief was not "sufficient evidence of undue influence to compel a contrary conclusion" regarding enforceability of release agreement).

No. 12), is converted into a motion for summary judgment and granted.

Accordingly, it is on this 19th day of June 2015, hereby

**ORDERED** that Defendant's motion to dismiss, (D.E. No. 12) is converted into a motion for summary judgment and granted as to all claims, and it is further

**ORDERED** that the Clerk of the Court shall mark this case closed.

**SO ORDERED.**

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**
